[No. D023183. Fourth Dist., Div. One. Aug. 12, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY JOSEPH ANTOINE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion parts B., C. and D.

490

## COUNSEL

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Anne Marie Urrutia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—Appellant Gary Joseph Antoine was convicted of two counts of carjacking, two counts of assault with a deadly weapon, two counts of robbery, one count of unlawful vehicle taking and one count of possession of a firearm by a felon. It was found true that as to all but the possession of a firearm charge, appellant used a firearm within the meaning of Penal Code[2] section 12022.5. It was also found true appellant had served a term of imprisonment within the meaning of section 667.5, subdivision (b).

Antoine appeals, arguing the crime of carjacking is unconstitutionally overbroad, vague and denies equal protection, that the court abused its discretion in refusing to sever the firearm possession charge and made various instructional and sentencing errors.

### FACTS

#### A. *Prosecution Case*

On August 21, 1994, at approximately 3:30 in the afternoon, Gerardo Padilla and Leticia Flores were driving home in Padilla's pickup truck. Padilla noticed they were being followed by four men in an automobile. As Padilla stopped at his apartment one of the men, appellant, got out of the car, moved quickly to the truck, pointed a gun at Padilla and told him to get out. Padilla told Flores to run. She started to run but then stopped. Padilla got out of the truck, ran around to where Flores was standing, and the two ran. Appellant drove the truck away.

On the afternoon of August 21, 1994, Chuong Nguyen was at the apartment complex where appellant lived. Nguyen noticed appellant removing tires from a pickup truck later identified as Padilla's. Appellant asked and Nguyen helped him move the tires to an elevator at the complex.

_____

[2]All further statutory references are to the Penal Code.

At approximately 6:30 that evening, officers received a radio call that a truck was being stripped at appellant's apartment complex. The officers went to the location and found Padilla's truck. Its tires and radio had been removed. The officers interviewed residents and concluded the stolen items were in appellant's apartment. A search warrant was obtained for the residence. The ensuing search, conducted with the knowledge of appellant's wife, revealed the keys for Padilla's truck, its tires and stereo equipment.

On September 6, 1994, Detective Theodore Carignan was watching a location where he hoped to find appellant. At the location the detective saw appellant's wife. When appellant appeared, the detective and uniformed officers approached and yelled at him not to move. Appellant ran but was apprehended. The detective stated to appellant: "You are Antoine, you are under arrest for robbery." Appellant replied: "I am not Antoine. I am Howard Williams." Appellant repeatedly tried to convince the detective he was not Antoine.

The next day Detective Garcia showed Flores a photo lineup containing a picture of appellant. Flores picked out the picture of appellant as the man who pointed a gun at her and rated her confidence level in the identification as a nine on a scale of one to ten. The next day Padilla was shown the lineup and also picked out the photograph of appellant. Padilla rated his confidence level as 10.

Appellant's fingerprints were found on Padilla's truck, wheels and stereo equipment.

B. *Defense Case*

Jerry Jennings, a lifelong friend of appellant, testified that on the day of the Padilla-Flores robbery he was standing with appellant outside appellant's apartment complex when a man drove up in a pickup truck and asked if appellant wanted to buy the wheels on the vehicle. Appellant stated he did. Appellant and the man went to the back of the complex and later Jennings saw appellant rolling tires toward the elevator.

Another friend was at appellant's apartment the afternoon of the robbery. When he arrived a man whom he did not know was there. As the man left, appellant said to him: "Thank you for doing business."

A friend of appellant's family witnessed the arrest. She stated she did not hear the police make an announcement of authority when they arrived. Appellant's mother testified there were many drive-by shootings in the

neighborhood and she had told appellant if he ever heard sounds like the start of a shooting he should run.

Appellant also attacked Padilla's and Flores's identifications with general testimony from an expert on perception and memory by showing inconsistencies between their descriptions of the robber and appellant's appearance.

## DISCUSSION

### A. Crime of Carjacking

Appellant argues the crime of carjacking is unconstitutionally overbroad, vague and denies equal protection.

In 1993 the Legislature in the form of section 215 created the crime of carjacking. Section 215 states: "(a) 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.

"(b) Carjacking is punishable by imprisonment in the state prison for a term of three, five, or nine years.

"(c) This section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

### 1. Overbreadth

Appellant cites legislative history indicating the crime of carjacking was enacted in response to a burgeoning problem of violent auto takings, often by thrill seekers or gang members undergoing initiating rites. This thrill seeking, nonlarcenous motivation created problems since the crime of robbery requires the intent to permanently deprive. The Legislature, therefore, created the crime of carjacking requiring an auto taking by force or fear but

with no requirement for an intent to permanently deprive. (*People* v. *Medina* (1995) 39 Cal.App.4th 643, 647-648 [46 Cal.Rptr.2d 112].) The crime of carjacking has terms of imprisonment longer than those for second degree robbery, that is, longer than the term applicable to one who, before the enactment of section 215, committed a robbery by taking a motor vehicle. (Cf. §§ 213, subd. (a)(2), and 215, subd. (b).)

■ Appellant argues the crime of carjacking is overbroad since, while the crime was enacted to deal with thrillseeking joy riders and others not intending to deny permanent possession, the section also ensnares "traditional" robbers, that is, those who took intending to permanently deprive, and who would, but for section 215, face shorter sentences.

There are at least two serious defects in appellant's argument. First, the overbreadth concept deals with statutes that are so broadly written they punish both constitutionally protected conduct, usually free speech, as well as acts which may validly be prohibited. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 292, pp. 425-428; Tribe, American Constitutional Law (2d ed. 1988) § 12-27, pp. 1022-1024.) Clearly, the crime of carjacking does not create a potential for the punishment of protected conduct.

More importantly, appellant's argument fails since its central premise is mistaken. It may be that the Legislature was *moved* to specifically make carjacking a crime because of its growing frequency among thrill seekers and because of the difficulty in convicting such individuals of traditional robbery. However, the *reason* for a special statute on the subject, with a penalty greater than that for second degree robbery, is that carjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large. (See generally, Com. Analysis of Assem. Bill No. 6 (1993-1994 Reg. Sess.); Sen. Floor Analysis of Assem. Bill No. 6 (1993-1994 Reg. Sess.) as amended Sept. 9, 1993; Sen. Rules Com., 3d reading analysis of Assem. Bill No. 6 (1993-1994 Reg. Sess.).)

Whether a carjacker is seeking thrills or "wheels," the danger to the victims and to society is equally great. The intent of each is equally difficult to determine, and problems of proof regarding the intent to permanently deprive can arise as to both. It is meaningless to argue that somehow a "traditional" robber whose crime involves the forcible taking of a motor

vehicle has been constitutionally disadvantaged by the application to him of the carjacking statute.

### 2. *Vagueness*

■ Appellant argues section 215 is vague in two respects. First, he argues the statements in section 215, subdivision (c) that the section shall not be construed to supersede or affect the crime of robbery as defined in section 211 and that "A person may be charged with a violation of [section 215] and section 211" are ambiguous since they provide no notice of when either a carjacking or robbery charge or a concurrent robbery and carjacking charge may be brought.

There is nothing ambiguous about the cited parts of the section. It is inescapably the case that some criminal acts and courses of conduct result in the commission of more than one crime. Section 215 clearly gives notice that it does not supplant section 211 and that, in any given case, depending on the facts and the discretion of the prosecutor, a carjacking may result in charges of both carjacking and robbery. (See *People* v. *Dominguez* (1995) 38 Cal.App.4th 410, 416-419 [45 Cal.Rptr.2d 153].)

Second, appellant, noting that section 215, subdivision (a) states carjacking is the taking of a motor vehicle from its possessor or from a passenger, argues the section is ambiguous and unacceptably vague in failing to make clear whether a single act of forcibly taking where a possessor and passengers are involved results in a single or multiple counts of carjacking.

■ The basic statement of the void for vagueness concept is straightforward: "A criminal statute which fails to define a crime with sufficient certainty violates the constitutional guarantee of due process of law. [Citation.] This 'void for vagueness' doctrine requires that 'the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable [for] its penalties . . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential element of due process of law.' [Citation.]" (*People* v. *Deskin* (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].)

While the core of the vagueness concept is that basic fairness requires fair notice the practicalities of defining crimes makes the concept more complex

and requires the indulging of certain necessary fictions. (See *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].) "In considering whether a legislative proscription is sufficiently clear to satisfy the requirements of fair notice, we consider not only the language of the challenged statute, but also its legislative history. [Citation.] 'We thus require citizens to apprise themselves not only of the statutory language but also of legislative history . . . and underlying legislative purposes [citation].'" (*People* v. *Morse* (1993) 21 Cal.App.4th 259, 270 [25 Cal.Rptr.2d 816].) We also require citizens apprise themselves not only of subsequent judicial decisions interpreting a statute but of decisions construing other statutes using substantially similar language. (*People* v. *Deskin, supra*, 10 Cal.App.4th at p. 1400.)

██ In *People* v. *Hamilton* (1995) 40 Cal.App.4th 1137, 1140-1144 [47 Cal.Rptr.2d 343], the court carried out the same apprisal of statutory content, history, purpose and related statutes and cases required of citizens, including appellant, and determined that one who carjacks a vehicle from the person or immediate presence of a possessor and a passenger may be charged with and convicted of two counts of carjacking. It is necessarily the case, therefore, that section 215, is not, when read in light of its language and legal context, void for vagueness insofar as it defines the number of offenses committed when the vehicle is taken from both a possessor and a passenger.

3. *Equal Protection*

██ Under the heading of equal protection appellant makes two arguments. First, he contends there is something untoward in the fact section 215 states it does not supersede section 211 and specifically states a person may be charged with both robbery and carjacking. Noting that second degree robbery carries a shorter sentence than carjacking and that a single act may qualify as a second degree robbery and a carjacking, he contends equal protection is violated since similarly situated individuals, those who commit by a single act both offenses, may be punished differently. Appellant cites no authority for this argument.

██ It is routinely the case that a single act may result in the commission of multiple offenses. Except in cases where a special statute deals with all the requirements of a general statue and thus supplants it, there is no impediment to charging under the multiple offenses committed. (*People* v. *Rackley* (1995) 33 Cal.App.4th 1659, 1665 [40 Cal.Rptr.2d 49].) Nor is there any restriction on multiple convictions on offenses arising from the

same act unless one offense is necessarily included in the other. (*People* v. *Dominguez, supra*, 38 Cal.App.4th at p. 418.)

The doctrine of preclusion, in which a special statute supplants a general one, is nothing more than a device to ascertain legislative intent. (*People* v. *Rackley, supra*, 33 Cal.App.4th at p. 1665.) When, as in the present case, the Legislature has stated that one statute does not supplant another, then the doctrine has no application and no question of preclusion can arise.

Nor is there any impediment to conviction of carjacking and robbery arising from the same act since neither is a necessarily lesser included offense of the other. (*People* v. *Dominguez, supra*, 38 Cal.App.4th at pp. 416-420.)

There is nothing irregular, unusual or improper in charging a defendant with both carjacking and robbery, and indeed with vehicle taking (Veh. Code, § 10851, subd. (a)), when all arise from the same act. There is specifically no denial of equal protection since every similarly situated defendant chargeable with those offenses will face the same charging, convicting and sentencing options.

Next, appellant argues equal protection is denied since the Legislature provided no reason for why a robbery involving the taking of a motor vehicle should be punished more severely than a robbery involving the taking of any other piece of property. Once again appellant cites no specific or general authority supporting or illuminating his contention. As we have noted, given the particular vulnerability of those driving or occupying motor vehicles, given the particular dangers inherent in the forcible taking of vehicles and given the apparent inability of existing criminal sanctions to control this serious criminal activity, the Legislature could rationally enact the crime of carjacking with punishment greater than that prescribed for either robbery or auto taking.

### 4. *Unconstitutional Application*

Appellant argues whether section 215 is facially valid, its application to him was improper. He first argues since the driver of the vehicle he took was present in the vehicle and had not relinquished possession to the passenger, it was improper to charge him with two counts of carjacking. This argument

was specifically rejected in *People* v. *Hamilton*, *supra*, 40 Cal.App.4th at pages 1140-1144.

Next, appellant argues while it might be proper under some circumstances to charge both a carjacking and robbery arising from the same act, for example, when some piece of property is taken in addition to the vehicle, it is not when only the vehicle is taken. As noted above we find no impediment to charging and convicting a defendant of both robbery and carjacking when the only property taken is the vehicle.

B.-D.*

. . . . . . . . . . . . . . . . . . . . .

Huffman, J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 20, 1996.

---

*See footnote 1, *ante*, page 489.